# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN D. LOVELACE,<br>  Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NATIONWIDE MUTUAL<br>INSURANCE COMPANY,<br>  Defendant. | :<br>:<br>: | No. 18-2701 |

## MEMORANDUM

**Schiller, J.**                                August 10, 2018

  John Lovelace was hurt in a car accident and now he is mired in a dispute with his insurance company, Nationwide Mutual Insurance Company ("Nationwide"). He sued Nationwide for breach of contract and bad faith. He also sued Nationwide under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL). Nationwide, however, argues that under the circumstances surrounding this case, he just cannot do that. Nationwide therefore seeks to dismiss his UTPCPL claim.

  Nationwide's motion to dismiss involves an intradistrict split that has been going on for a few years. In 2002, the Third Circuit Court of Appeals predicted that the Pennsylvania Supreme Court would bar a UTPCPL claim such as the one brought by Lovelace. The Pennsylvania Superior Court, however, has subsequently ruled differently from the Third Circuit and would permit a UTPCPL claim such as the one brought by Lovelace.

  Which road must a district court travel given the divergent paths laid out by the Third Circuit and the Pennsylvania Superior Court? Because this Court concludes that the Pennsylvania Superior Court's ruling constitutes an intervening change in the law, the Court will follow the recent rulings of the Pennsylvania Superior Court. Nationwide's motion to dismiss will be denied.

**I.     FACTUAL BACKGROUND**

It was snowing on February 26, 2013, when Lovelace was heading south on Route 66 in his 2004 Nissan Armada. (Compl. ¶¶ 4–5.) Suddenly, a 2002 Toyota Camry, being driven by Chase Carmichael, crossed into Lovelace's lane of travel and hit the Armada. (*Id*. ¶ 5.)

Lovelace was insured by Nationwide. (*Id*. ¶ 4.) The Camry was covered by a policy owned by Robert Graham, who owned the vehicle. (*Id*. ¶ 7.) Graham's policy was with Erie Insurance Company; Carmichael maintained a policy with Nationwide. (*Id*. ¶¶ 7–8.)

According to Lovelace, his claims exceeded the policy limits of both Graham's and Carmichael's insurance policies. (*Id*. ¶ 11.) The parties mediated and agreed to settle for an amount just below Erie's liability policy limit of $250,000. (*Id*. ¶ 14.) Nationwide refused to contribute to the settlement because it was aware that Lovelace was insured by Nationwide and it sought to "thwart the third party settlement and minimize, not pay and limit and/or reduce the Plaintiff's Underinsured Motorist claims." (*Id*. ¶ 16.)

"Defendant Nationwide was aware that [Lovelace] had three cars with stacked Underinsured Motorist coverage limits applicable for this loss, in the amount of $100,000/$300,000, for a total of $300,000 in available Underinsured Motorist benefits." (*Id*. ¶ 17.) Lovelace made a demand on Nationwide for underinsured motorist benefits pursuant to his policy. (*Id*. ¶ 26.) Nationwide refused to pay. (*Id*. ¶ 27.)

As noted previously, Lovelace brings three claims against Nationwide: a breach of contract claim; a statutory bad faith claim; and a UTPCPL claim.

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (holding that pleading labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 233.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a motion to dismiss for failure to state a claim. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

Second, the court must make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

**III.     DISCUSSION**

Nationwide seeks to dismiss the UTPCPL claim. It argues that the economic loss doctrine precludes a UTPCPL claim in this case.

The economic loss doctrine bars a plaintiff from recovering tort damages for economic losses stemming solely from a breach of contract. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002). The economic loss doctrine prohibits claims if: (1) they arise solely from a contract between the parties; (2) the duties allegedly breached were created by and grounded in the contract; (3) the liability stems from a contract; or (4) the tort claim essentially duplicates a breach of contract claim or the success of a tort claim relies on the terms of a contract. *See McGuckin v. Allstate Fire & Cas. Ins. Co.*, 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015) (quoting *Pesotine v. Liberty Mut. Grp., Inc.*, Civ. A. No. 14-784, 2014 WL 4215535, at *4 (M.D. Pa. Aug. 25, 2014).

Nationwide argues that the economic loss doctrine applies here and that it bars Lovelace's UTPCPL claim. It relies on the Third Circuit's decision in *Werwinski*, in which the court predicted that Pennsylvania law would bar a UTPCPL claim based on the economic loss doctrine.

Plaintiff does not disagree with Nationwide's reading of *Werwinski* or the viability of the economic loss doctrine generally. However, the answer to the question of whether the economic loss doctrine bars a UTPCPL claim is more complicated. Since *Werwinski* was decided sixteen years ago,

the Pennsylvania Superior Court has disagreed with the Third Circuit's holding in *Werwinski*. Plaintiff argues that this Court is therefore not bound to follow *Werwinski*.

A number of courts in this District have addressed this issue. *Werwinski* is the starting point. That case was a class action against Ford Motors alleging that it knowingly sold defective products. 286 F.3d at 664. The district court applied the economic loss doctrine to preclude the plaintiffs' UTPCPL claim. *Id*. at 670. On appeal, the Third Circuit affirmed that ruling. Because the question posed involved a controlling issue of state law, the Third Circuit first turned to the Pennsylvania Supreme Court for guidance. However, the Pennsylvania Supreme Court had not spoken on the issue. Thus, the Third Circuit was left to predict how the highest court in Pennsylvania would rule by looking to the decisions of Pennsylvania's intermediate courts. *Id*.; *see also U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996) ("The rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise."). Unfortunately, at the time *Werwinski* was decided, the issue of whether the economic loss doctrine barred a UTPCPL claim in Pennsylvania had not been resolved in a published opinion. *Werwinski*, 286 F.3d at 675. "Having determined that the federal and state decisions interpreting Pennsylvania law shed little light on the question at issue," the Third Circuit turned to courts outside of Pennsylvania for an answer. Specifically, it turned to cases interpreting Michigan and Wisconsin law regarding the economic loss doctrine. *Id*. at 676. The court also focused on the arguments of the parties, both of which "provide[d] plausible explanations for their respective positions." *Id*. at 679. Ultimately, the Third Circuit was convinced that the Pennsylvania Supreme Court would exhibit a "lack of hospitality to tort liability for purely economic loss." *Id*. at 680 (quoting *Aloe Coal Co. v. Clark Equip. Co.*, 816

5

F.2d 110, 119 (3d Cir. 1987)). The court also favored an interpretation of the law that restricted liability, in the absence of a contrary directive from the Pennsylvania Supreme Court. *Id*. And so, the Third Circuit determined that Pennsylvania law would bar a UTPCPL claim based on the economic loss doctrine.

The landscape, however, changed dramatically when the Pennsylvania Superior Court decided *Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. Ct. 2013). In *Knight*, the appellees asserted that the economic loss doctrine barred the appellant's UTPCPL claim because only economic damages had been alleged. *Id*. at 951. The Superior Court disagreed. It concluded that "[t]he claims at issue in this case are statutory claims brought pursuant to the UTPCPL, and do not sound in negligence. Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to Knight's UTPCPL claims." *Id*. The decision in *Knight* was recently followed in another case before the Pennsylvania Superior Court, *Dixon v. Northwestern Mutual*, 146 A.3d 780, 790 (Pa. Super. Ct. 2016) ("Dixon's UTPCPL claim is not barred by the economic loss doctrine.").

The pronouncements in *Knight* and *Dixon* cannot be squared with the prediction in *Werwinski*. This Court must therefore decide whether to apply *Werwinski* or *Knight*. As noted previously, numerous courts in this District have already wrestled with this question. For instance, in *McGuckin v. Allstate Fire & Casualty Insurance Company*, the court recognized that a number of courts in this District "have held that *Werwinski* no longer is controlling authority and have followed *Knight*," while other courts have concluded that "*Werwinski's* prediction of the Pennsylvania Supreme Court ruling on the economic loss doctrine remains binding on the district courts in this circuit until either the Pennsylvania Supreme Court or the Third Circuit rules otherwise." *McGuckin*, 118 F. Supp. 3d at 720. The *McGuckin* court concluded that it was bound

by the Third Circuit's decision in *Werwinski*. *Id*. Numerous courts have also applied *Werwinski*. *See, e.g.*, *Powell v. St. Joseph's Univ.*, Civ. A. No. 17-4438, 2018 WL 994478, at *8–10 (E.D. Pa. Feb. 20, 2018) ("The question before this Court is not whether the rule in *Werwinski* or *Knight* is correct, but whether *Knight* provides persuasive evidence of a change in Pennsylvania law. This Court concludes that it does not."); *Yamarick v. Unum Group*, Civ. A. No. 16-6164, 2017 WL 3008751, at *4 (E.D. Pa. July 14, 2017); *Whitaker v. Herr Foods, Inc.* 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016); *Vaughan v. State Farm Fire and Cas. Co.*, Civ. A. No. 14-1684, 2015 WL 12806508, at *1 n.1 (E.D. Pa. July 31, 2015).

That is one side of the story. Cases that do not follow *Werwinski* note an important exception to the general rule that district courts are bound to apply the predictions of the Third Circuit on the outcome of state law: an intervening change in the law. *See Busch v. Domb*, Civ. A. No. 17-2012, 2017 WL 6525779, at *4 (E.D. Pa. Dec. 21, 2017)("[W]hen we are applying state law and there is persuasive evidence that it has undergone a change, we are not bound by our previous panel decision if it reflected our reliance on state law proper to its modification.") (quoting *Robinson v. Jiffy Exec. Limousine Co.*, 4 F.3d 237, 239–40 (3d Cir. 1993)).

District courts are not bound by a court of appeals' prediction when intermediate state appellate courts indicate that the prediction was wrong. *See Sweitzer v. Oxmaster, Inc.*, Civ. A. No. 09-5606, 2010 WL 5257226, at *4–5 (E.D. Pa. Dec. 23, 2010) (citing *Largoza v. Gen. Elec. Co.*, 538 F. Supp. 1164, 1166 (E.D. Pa. 1982)). Although this Court may not be bound by the pronouncement of the Pennsylvania Superior Court on an issue upon which the Pennsylvania Supreme Court has remained silent, the Court should not ignore that current state of the law.

"*Werwinski* no longer has any vitality." *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421,

7

427 (E.D. Pa. 2015). "Since *Werwinski* issued, the Pennsylvania courts have spoken. They have held that the economic loss doctrine does not apply to UTPCPL claims." *Id*. At the time *Werwinski* was decided, the Third Circuit was predicting without guidance from Pennsylvania courts. Now, the Pennsylvania Superior Court has spoken clearly on the issue. While it would be ideal for the Third Circuit or Pennsylvania Supreme Court to weigh in on the current state of the law, waiting for that day is not the better course of action. Currently, a litigant in state court in Pennsylvania can bring a UTPCPL claim while a litigant in federal court with an identical claim may—or may not— be barred from bringing that claim, even though the federal court must apply current Pennsylvania law to this question of state law. Such inconsistent outcomes encourage forum shopping, an unwelcome result. *See Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 414 (E.D. Pa. 2016); *see also Busch*, 2017 WL 6525779, at *5 ("The Court's decision to follow holdings of the Pennsylvania Superior Court avoids the perils of forum shopping.").

This Court concludes that the clear pronouncement by the Pennsylvania Superior Court in *Knight*—subsequently followed in *Dixon*—constitutes a clear change in law that has proved incorrect the Third Circuit's prediction in *Werwinski*. The current state of the law does not bar Plaintiff's claim and Plaintiff should not be legally disadvantaged because he finds himself in federal court. Moreover, the prediction in *Werwinski* was charted from an unmarked path. Therefore, the Court will follow the decision from *Kantor*, *Busch*, and *Landau*; Pennsylvania law does not bar Lovelace's UTPCPL claim here.

## IV.   CONCLUSION

A district court must follow the law set forth by its corresponding court of appeals. But like much of the law, even seemingly hard and fast rules come with exceptions. This case presents the application of one such exception. This Court may apply the current state of the law in Pennsylvania if the Commonwealth's intermediate courts have clearly ruled contrary to the Third Circuit's prediction on a matter of Pennsylvania law.[1] Defendant's motion to dismiss is denied. An Order consistent with this Memorandum will be docketed separately.

---

[1] Having once proudly served on the Pennsylvania Superior Court, I am inclined to give the rulings of that tribunal the benefit of the doubt.